**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**GLENDA LEE,**

                              **Plaintiff,**

**v.**                                                    **03-CV-0814A(Sr)**

**MASCOT PETROLEUM CO.,**
**Subsidiary of Sunoco, Inc.,**

                              **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

          This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #8.


          Currently before the Court is defendant's motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(6)  for failure to state a claim upon which relief may be granted or,

alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56.  Dkt. #6.  For the

following reasons, it is recommended that defendant's motion to dismiss be denied and

defendant's motion for summary judgment be granted.


          Plaintiff commenced this action *pro se*, pursuant to Title VII of the Civil

Rights Act of 1994 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*., alleging that

she was subjected to unequal terms and conditions of employment on the basis of her

race and color, and terminated from her employment in retaliation for her complaints of

discrimination.  Dkt. #1, ¶¶ 13-14.  Specifically, plaintiff's complaint alleges the

following:

> Complain to manager about treatment of co-workers against
> me on 10/5/02 @ 2731 Delaware Ave.  Complained of the
> treatment from co-worker Shawn on 10/4/02 & Deli Manager
> always addressed me [as] Ms. Glenda/no other co-workers
> by surname.  Spoke with him on numerous occassions [sic]
> to stop calling me that but continue. [sic] When arrived to
> work on 10/10/02 stated that I failed to come in on schedule
> [sic] date.

Dkt. #1, ¶ 19.


In her complaint to the New York State Division of Human Rights

("NYSDHR"),[1] plaintiff alleged that she was hired by defendant as a cashier and deli

person on August 15, 2002 and terminated by the General Manager, Mike, on October

10, 2002.  DHR0010, ¶¶ 1-2.  Plaintiff, the only black employee at the store,

complained that she was treated differently than her white co-workers. DHR0010, ¶3.

Specifically, plaintiff alleged the following:

> I was scheduled to work nine to eleven days straight and
> every weekend, while my white counterparts were given
> flexible hours.  Although I was trained to work in the deli, on
> October 4, 2002 while working with coworkers Shawn, Phil,
> and Assistant Manager Mike Luck, I attempted to service a
> deli customer, but was told by Shawn that I was not
> supposed to.  I confronted him about this, then went outside
> to calm down.  When I returned, I discovered money had
> been removed from my drawer.  The following day, I
> complained to General Manager Mike that I believed I was
> being treated unfairly because of my race/color.

---

[1] Documents presented to the NYSDHR are attached to defense counsel's affidavit at Dkt. #6,
Exh. C, and will be cited by the NYSDHR's bates stamped numbers, which are preceded by the
abbreviation "DHR."

DHR0010, ¶ 3.  In addition, plaintiff complained that she reviewed the new work

schedule on Tuesday, October 8, 2002 and observed that she was not scheduled to

work Wednesday or Saturday.  DHR0010, ¶ 4.

> However, upon arriving to work on Thursday, October 10,
> 2002, General Manager Mike informed me I was scheduled
> to work Wednesday and I was terminated.  I believe the
> schedule was changed subsequent to me checking on
> Tuesday.  It is my contention that respondent terminated me
> because I complained of being treated differently because I
> am black.

DHR0010-11, ¶ 4.

In response to this charge, defendant asserted that plaintiff was

terminated because she received three disciplinary notices in two weeks: (1) on

September 25, 2002, plaintiff failed to call or show up for work; (2) on October 8, 2002,

plaintiff was observed talking on her cell phone; and (3) on October 9, 2002, plaintiff

failed to call or show up for work.  DHR0030-31, ¶ 2.

Defendant submitted work schedules[2] demonstrating that plaintiff was not

scheduled to work nine-to-eleven days straight, but worked a rotating shift and received

---

[2] The work schedules reveal that plaintiff was scheduled to work as follows:
Aug. 15 (6-2); 16 (7-2); 17 (2-10); 18 (off); 19 (6-2); 20 (2-10);
Aug. 21 (8-4); 22 (8-4); 23 (off); 24 (off); 25 (8-4); 26 (2-10); 27 (2-10);
Aug. 28 (11-7); 29 (10-6); 30 (off); 31 (8-4); Sept. 1 (2-10); 2(off); 3 (2-10);
Sept. 4 (off); 5 (2-10); 6 (3-11); 7 (2-10); 8 (2-10 DELI); 9 (2-10); 10 (off);
Sept. 11 (2-10); 12 (off); 13 (off); 14 (1:30-9:30); 15 (1:30-9:30); 16 (1:30-9:30); 17 (1:30-9:30);
Sept. 18 (off); 19 (2-5); 20 (off); 21 (1:30-9:30); 22 (1:30-9:30); 23 (1:30-9:30); 24 (1:30-9:30);
Sept 25 (1:30-9:30 NO SHOW); 26 (off); 27 (2-10); 28 (off) 29 (FAMILY EMERGENCY); 30 (off);
    Oct. 1 (2-10);
Oct. 2 (1:30 -9:30 DELI); 3 (1:30-9:30 DELI); 4 (1:30-9:30); 5 (off); 6 (off); 7 (1:30-9:30 DELI);
    8 (1:30-9:30 DELI);
Oct. 9 (2-10 NO SHOW).
DHR0039-56.

rotating days and weekends off, as did her co-workers. DHR0031, ¶ 3. The defendant

also notes that plaintiff requested and received September 20th and September 29th off,

even though she was scheduled to work, and that her request to work 1:30 p.m. to 9:30

p.m. rather than the regular 2:00 p.m. to 10:00 p.m. was granted as often as possible

so that plaintiff could get home sooner to attend to her child. DHR0031, ¶ 3.


      With respect to the incident on October 4th, defendant asserted that

plaintiff

> was scheduled to work the cash register along with her co-
> worker Phil. Another co-worker, Shawn was scheduled to
> work the deli. All off the employees are cross-trained to
> work the deli, however, this does not mean that an employee
> can decide what area they want to work at any given time. If
> Shawn had not been there, or if Shawn requested help and
> the Charging Party was not busy at her station, then it may
> have been proper for the Charging Party to assist at the deli.
> However, this was not the case. Shawn was correct in
> telling the Charging Party that she was not supposed to be
> working in the deli. When Phil, the other co-worker that was
> working the cash register with the Charging Party came in at
> 4:00, he found an extremely large amount of money in the
> register. As a safety precaution, the employees had all been
> trained to deposit large bills in to the safe and to keep no
> more than $100.00 in cash in the register at a time. . . . Phil
> took out the large bills along with the excess over the
> $100.00 and deposited the money in the safe. The money
> that the Charging Party states was "removed from her
> drawer" was removed and placed in the safe. This is a task
> that the Charging Party failed to complete. . . . No money
> was missing and the Charging Party did not receive any
> disciplinary notice for this.

DHR0031-32, ¶ 3. The defendant denied that plaintiff's schedule for October 10th was

changed, with the Store Manager and Deli Manager each submitting affidavits that the

work schedule submitted for the week of October 9, 2002 was a copy of the original

schedule which was posted before October 8th and was not changed.  DHR0032, ¶ 4; DHR0057-58.  According to that schedule, plaintiff was off on Saturday, October 12th and Tuesday, October 15th.  DHR0054.

Defendant submitted termination notices for two other employees who were terminated in September and October of 2002 after failing to report to work as scheduled.  DHR0061-62.  Defendant also submitted a copy of its employee handbook, which states that repeated excessive or unreported absences are grounds for immediate dismissal.  DHR0080.  The handbook also states that any starting time that is 15 minutes or more past the scheduled starting time is considered excessive.  DHR0070.

Plaintiff submitted a rebuttal letter stating that she was hired as a deli worker by an individual named Beké, who was fired shortly after she was hired.  DHR0018.  Plaintiff explained that she called the store 1.5 hours after she was scheduled to work on September 25, 2002 and informed Mike that she was in the midst of a family emergency.  DHR0018.  She stated that she was not talking on her cell phone, but was looking up a number for a customer on October 8th.  DHR0018.  Plaintiff also raised the following concern in her rebuttal letter:

> On many, many, many occassions [sic] I had to tell and ask Russ to stop calling me "Ms. Glenda."  His response was, "what you don't like it. . . " I would tell him no that's what my nine year old [sic] friends call me . . . and that was each and every time he called me that.  Then on occassions [sic], he'd say ["]Good afternoon Ms. . . .I mean Glenda["], but with a little smirk that was covered with sarcasm.  I have never heard him address any other co-worker by the surname of

> Mr., Mrs. or Ms. except me, even though he was aware that
> it irritated me and that went on until I last worked with him.
> From my opinion I don't think it was a gesture of respect but
> a gesture of mockery. There was always a smirk on his face
> when he would try to change it from Ms. Glenda to Glenda.

DHR0019-20. Plaintiff noted that she went to work to speak with her manager

regarding the incident on October 4th and that

> Mike spoke with me, but in a very nasty, unprofessional tone
> which in turn agitated me even more. I then turned nasty
> and told him "I'm a 36 year old strong African American
> woman and I don't approve of being yelled [at] and I don't
> appreciate the tone of voice he's talking to me in and could
> we discuss this like to [sic] adults. He then told me that he's
> feed [sic] up with all this nonsense, his employees acting so
> childish and say what I have to say.
>      I told him I felt as though I'm being discriminated
> against, he asked how [sic] I stated

> 1.  When I arrive at work on scheduled days other
>     coworkers never speak to me, except Russ, when
>     he's trying to be sarcastic with the Ms. Glenda bit.

> 2.  The incident that occurred on 10/4/02 how I was
>     embarrassed in front of a customer.

>                          * * *

> But as I was saying all that, Mike insisted that he would
> speak to the other co-workers. Because he did not want me
> to feel uncomfortable and yet he was still being very nasty
> until I stated we can stand here and yell all day long and get
> nothing accomplished. He finally took a step back and put
> things in prospective [sic] and said "Glenda, you are a very
> intelligent young lady, if you say these things are going, on,
> he was going to correct them[."] I said thank you and see
> you on Monday.

DHR0023-24. Plaintiff conceded that the manager did, in fact, speak with her co-

workers, because upon her arrival on October 7th

> all of the Hello Glenda's and the How are you(s) were
> dripping with sarcasm, and a little to [sic] phony. But, I felt
> as if something was and had been done.

DHR0025.  Plaintiff reiterated that

> I had checked schedules upon arrival [on 10/8].  I was not
> scheduled to work 10/9/02.  I was scheduled off Wednesday
> and Saturday.  Who changed the schedule, I have no Idea
> [sic].

DHR0026.


The NYSDHR issued its Final Investigation Report and Basis of

Determination on August 20, 2003.  DHR0015.  The NYSDHR determined that

> The investigation revealed complainant was terminated for
> job abandonment accompanied by multiple disciplinary
> notices, which she had been previously warned about.
> Review of the record showed complainant's work schedule
> was consistent with her white counterparts.  There was no
> evidence to show work schedules were altered.  Respondent
> has established rules and procedures which are enforced
> with all employees regardless of race/color.  Complainant
> was terminated for a violation of these rules and respondent
> has also terminated white employees for violation of these
> rules.  The investigation did not reveal sufficient evidence to
> support a belief that complainant was terminated because of
> her race/color.

DHR0016.  The EEOC adopted the findings of the NYSDHR and issued a right to sue

letter on October 20, 2003.  Dkt. #6, Exh. D.  Plaintiff commenced this action by filing

her complaint on November 3, 2003.  Dkt. #1.


## DISCUSSION AND ANALYSIS

Defendant asserts that plaintiff's complaint fails to state a claim because

plaintiff fails to set forth any facts suggesting that her co-worker's use of the moniker

"Ms. Glenda" or other co-workers' failure to converse with her created a hostile work

environment sufficiently severe or pervasive to alter the terms and conditions of her

employment or that they even support an inference of discriminatory animus.  Dkt. #7, pp. 13-19.  With respect to plaintiff's retaliation claim, defendant argues that plaintiff's complaint to her manager is insufficient to constitute protected activity because the conduct of which she complains, *to wit*, the use of the moniker, "Ms. Glenda" does not constitute a complaint of discrimination.  Dkt. #7, p.20.

**MOTION TO DISMISS**

When ruling on a motion to dismiss, the Court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Leonard F. Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  In employment discrimination cases, a plaintiff's EEOC charge may be considered either as matters referenced in the complaint or as public records subject to judicial notice.  *Blunt v. Aetna/US Healthcare*, 2005 WL 1561800, at *1 (D.Conn. June 30, 2005); *McBride v. Routh*, 51 F. Supp.2d 153, 156 (D.Conn. 1999); *Nickens v. New York State Dep't. Of Corrs.*, 1996 WL 148479, at *1 (E.D.N.Y. 1996); *see also Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (treating allegations in the affidavit submitted to the EEOC as an integral part of plaintiff's pleadings).

Although the plaintiff need not plead a *prima facie* case of discrimination in order to survive a motion to dismiss, her complaint must comply with Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Court construes the complaint in the light most favorable to the plaintiff, accepting the plaintiff's allegations as true. *York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gregory*, 243 F.3d at 691. "This standard applies with particular strictness where the plaintiff files a *pro se* complaint alleging civil rights violations." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). Thus, the Court of Appeals has repeatedly warned that the pleading requirements in discrimination cases are very lenient, even *de minimis. Id.*

In the instant case, plaintiff complains that she, the only black employee in the store, who was hired by an individual who was fired shortly thereafter, was treated differently than her white co-workers with respect to her schedule and job duties; that a co-worker addressed her, but not other co-workers, by surname followed by her first name, *i.e.*, "Ms." Glenda, and refused to stop when asked; that other co-workers ignored her, embarrassed her in front of customers, and removed money from her drawer; and that she was terminated within a week of expressing to her supervisor her concern that she was being treated unfairly because of her race/color. Dkt. #1, ¶ 19; DHR0010-11, ¶ ¶ 3-4; DHR0018-27. Plaintiff also asserts that her work schedule was changed after it was posted so that her failure to report to work could be used as justification for termination. DHR0010, ¶ 4. Accepting these allegations as true, as

required in the context of a motion to dismiss, plaintiff meets the minimal standard required to state a claim for racial discrimination and retaliation. Accordingly, it is recommended that defendant's motion to dismiss be denied.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for

summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition

to a motion for summary judgment "shall be made on personal knowledge, shall set

forth such facts as would be admissible in evidence, and shall show affirmatively that

the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must

be admissible themselves or must contain evidence that will be presented in an

admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co. v. Airtemp*

*Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be

admissible if testified to at trial may not properly be set forth in an affidavit).


**Title VII of the Civil Rights Act**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

In the absence of direct evidence of discrimination, Title VII claims are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, and its progeny.  411 U.S. 792, 802 (1973).  This analysis requires that plaintiff establish a *prima facie* case of discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination on the basis of her membership in that class.  *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003); *Slattery v. Swiss Reinsurance America Corp.,* 248 F.3d 87, 91-92 (2d Cir.), *cert. denied*, 534 U.S. 951 (2001); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  The burden on the plaintiff at this stage of the analysis is *de minimis*.  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  Evidence of discrimination is not required. *James v. New York Racing Assoc.*, 233 F.3d 149, 153 (2d Cir. 2000).

If plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  *Id.; see Burdine,* 450 U.S. at 254.  "Any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision."  *Austin v. Ford Models, Inc.*, 149 F.3d 148, 153 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz*, 534 U.S. at 509.

-12-

If the employer carries this burden of production, the presumption raised by the *prima facie* case is rebutted and "simply drops out of the picture."  *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 510-11 (1993).  At this point, the case "becomes like any other case in that the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim."  *James*, 233 F.3d at 154.  Accordingly, in the context of a motion for summary judgment, the Court must examine the entire record to determine whether the plaintiff could satisfy her ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her.  *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).  The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. *Weinstock,* 224 F.3d at 42.

        <u>Hostile Work Environment</u>

Title VII claims are not limited to economic or tangible discrimination, but encompass the entire spectrum of disparate treatment, including claims of discriminatorily hostile or abusive work environments.  *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).  Thus, Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment.  *Id.*  However, "[c]onduct that is not severe or pervasive enough to create

an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.*

In assessing the existence of a hostile work environment, the Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.  The Court also considers the source of the conduct since an employer will generally not be liable when a co-employee, as distinct from a supervisor, is alleged to have engaged in harassing activity "unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it."  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998), *abrogated on other grounds by National R.R. Pass. Corp. v. Morgan,* 536 U.S. 101 (2002).

Plaintiff's allegations that a co-worker routinely addressed her as "Ms. Glenda" and that another co-worker once embarrassed her in front of a customer when she attempted to assist the customer at the deli, are not sufficiently offensive or prevalent to support a claim of hostile work environment nor are they obviously linked to plaintiff's race. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999); *Arroyo v. West LB Admin.*, 54 F. Supp.2d. 224, 229-31 (S.D.N.Y. 1999) (collecting cases), *aff'd* 213 F.3d 625 (2d Cir. 2000); *Shabat v. Billotti*, 925 F. Supp. 977, 981-86 (W.D.N.Y. 1996), *aff'd* 108 F.3d 1370 (2d Cir. 1997).  In addition,

there is no basis to impute this conduct to plaintiff's employer, as plaintiff admits that "something was . . . done" as soon as she brought these complaints to her manager's attention.  DHR0025.


                    Disparate Treatment and Retaliation

        "A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside [her] protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case."  *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir.  2003), *quoting Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  Here, plaintiff alleges that she was subjected to a more onerous, less flexible work schedule than her co-workers and that she was terminated.


        Plaintiff also claims that her termination was in retaliation for complaining about discriminatory treatment.  In order to establish a *prima facie* case of retaliation, the plaintiff must show: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  Complaining of discrimination to one's supervisor constitutes protected activity.  *Id.*  The causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.  *See Feingold v. New York*, 366 F.3d 138, 156-57 (2d Cir. 2004).

-15-

Accordingly, plaintiff's allegations that she was terminated shortly after complaining to her manager about the behavior of co-workers towards her satisfies her initial burden.

In response to plaintiff's claims of disparate treatment and retaliation, defendant proffered work schedules demonstrating that plaintiff worked a rotating shift and received rotating days and weekends off, as did her coworkers.  DHR0031, ¶ 3. The work schedule indicates that plaintiff worked until 9:30 p.m. on October 8, 2002 and was scheduled to work at 2:00 p.m. on October 9, 2002, but was a "NO SHOW NO CALL."  DHR0053-54.  The defendant also submitted affidavits from the Store Manager and Deli Manager, each of whom averred that the work schedule submitted for the week of October 9, 2002 was a copy of the original schedule which was posted before October 8th and was not changed;  a copy of its employee handbook advising employees that repeated excessive or unreported absence is a ground for immediate dismissal as well as termination notices for two other employees at that location who were terminated in September and October of 2002 after failing to report to work as scheduled; and disciplinary notices indicating that plaintiff failed to call or show up for work on September 25, 2002 and was observed talking on her cell phone on October 8, 2002.  DHR0030-31, ¶ 2;  DHR0057-58; DHR0061-62; DHR0080.  This is sufficient to rebut the presumption and require plaintiff to come forward with some evidence of intentional discrimination.

Despite being provided with a *Notice to Pro Se Litigant's Pursuant to Local Rule 56.2* (Dkt. #10), which explicitly advised plaintiff that she could not rely upon

-16-

the allegations in her complaint, but was required to submit evidence to the Court countering the facts asserted by the defendant, plaintiff failed to respond to defendant's motion.  Plaintiff cannot rely solely upon the allegation in her complaint to the NYSDHR, *to wit*, "I believe the schedule was changed subsequent to me checking on Tuesday," to controvert affirmations from the Store Manager and Deli Manager that the proffered schedule, which indicates that plaintiff was scheduled to work at 2:00 p.m. on October 9, 2002, was not altered.  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Moreover, in the proceedings before the NYSDHR, plaintiff explained, but did not dispute, her failure to report to work on September 25, 2002 and use of her cell phone while at work on October 8, 2002.  DHR0018.  Thus, there is nothing in the record before this Court and no proffer of evidence, or affidavit setting forth the prospect of discovering evidence, from which a reasonable factfinder could determine that discrimination was the real reason that defendant terminated plaintiff.

## CONCLUSION

Based on the foregoing, it is recommended that the defendant's motion to dismiss (Dkt. #6), be **DENIED**, but that defendant's motion for summary judgment (Dkt. #6), be **GRANTED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of

the Report and Recommendation to the *pro se* plaintiff and counsel for the defendant.


**SO ORDERED.**


DATED:      Buffalo, New York
            February 23, 2006

                              **S/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**